ROBERT L. ALLUM, APPELLANT, *v.* VALLEY BANK OF
NEVADA, VALLEY CAPITAL CORPORATION, VAL-
LEY MORTGAGE COMPANY, KENNETH CALLA-
HAN, ARTHUR DANIEL RYSSMAN AND PERRY
DILORETO, RESPONDENTS.

No. 23394

March 24, 1993                                    849 P.2d 297

*Kenneth J. McKenna,* Reno, for Appellant.

*Scarpello & Alling,* and *Rick Oshinski,* Carson City, for
Respondent DiLoreto.

*Vargas & Bartlett* and *Debra A. Robinson,* Reno, for Respond-
ents.

## OPINION

*Per Curiam:*

### FACTS

Valley Mortgage Company ("VMC") employed Robert L.

Allum ("Allum") as a loan officer.[1] VMC and the other defendants engaged in an illegal loan scheme involving "D.E. Program" loans which Allum would underwrite in the course of his duties as an FHA underwriter. VMC's loan scheme obtained investors' money by false pretenses because the loans did not comport with FHA guidelines as investors believed.

Allum, because his duty was to underwrite the D.E. Program loans, believed he was liable for them. Allum attempted to internally resolve the illegal activity by informing VMC's head FHA underwriter and other VMC officers of the practice. In spite of Allum's efforts, VMC continued the illegal activity. In July 1989, Allum reported the activity to the FHA. VMC officers then engaged in a cover-up and subsequently conspired to and did terminate Allum's employment.

Allum sued, alleging violations of Nevada RICO,[2] defamation, and wrongful termination. Throughout this litigation, Allum has claimed as damages his lost income following his wrongful termination. The district court dismissed Allum's Nevada RICO claim without prejudice on the ground that Allum had not been injured by a "predicate act"; that is, an act expressly prohibited by Nevada RICO.

Allum filed an amended complaint alleging the same three causes of action. Finding that Allum's FHA underwriting status did not qualify him as a "public officer" under NRS 207.400(1)(g), the district court again dismissed Allum's Nevada RICO claim without prejudice.

In his second amended complaint, Allum alleged that the defendants conspired to violate NRS 207.360(26), which then proscribed as a predicate Nevada RICO act obtaining money or property valued at $100 or more by false pretenses. Allum also alleged a violation of NRS 207.400(1)(g), which prohibits inducing the commission or omission of an act by a public officer in violation of his official duty. The district court again dismissed Allum's Nevada RICO claim, this time with prejudice. Allum appealed.

Allum contends that the district court erred by dismissing his Nevada RICO claim without leave to amend. We conclude that

---

[1]Because we are reviewing the grant of a motion to dismiss, we accept as true the complaint's factual allegations. Marcoz v. Summa Corporation, 106 Nev. 737, 801 P.2d 1346 (1990).

[2]Nevada's racketeering statutes, found at NRS 207.350 through NRS 207.520, are patterned after the federal Racketeer Influenced and Corrupt Organizations, or "RICO," statutes, 18 U.S.C. §§ 1961-1968. Hale v. Burkhardt, 104 Nev. 632, 634, 764 P.2d 866, 867 (1988). The Nevada racketeering statutes are herein referred to as "Nevada RICO."

under these facts Allum has failed to state—and is unable to state—a claim upon which relief can be granted. Thus, we affirm the district court's judgment.

## DISCUSSION

Nevada RICO not only provides for criminal sanctions[3] against those who violate its provisions, but also provides a private civil action to recover treble damages for injuries caused by a violation of its substantive provisions. A potent provision, NRS 207.470(1), provides:

> Any person who is injured in his business or property by reason of any violation of NRS 207.400 has a cause of action against a person causing such injury for three times the actual damages sustained. An injured person may also recover attorney's fees in the trial and appellate courts and costs of investigation and litigation reasonably incurred. . . . Any injured person has a claim to forfeited property or the proceeds derived therefrom and this claim is superior to any claim the state may have to the same property or proceeds if the injured person's claim is asserted before a final decree is issued . . . .

NRS 207.400 provides:

> Unlawful acts; criminal penalties.
>     1.  It is unlawful for any person:
>     (a) Who has with criminal intent received any proceeds derived, directly or indirectly, from racketeering activity to use or invest, whether directly or indirectly, any part of the proceeds, or the proceeds derived from the investment or use thereof, in the acquisition of:
>         (1) Any title to or any right, interest or equity in real property; or
>         (2) Any interest in or the establishment or operation of any enterprise.
>     (b) Through racketeering activity to acquire or maintain, directly or indirectly, any interest in or control of any enterprise.
>     (c) Who is employed by or associated with any enterprise to conduct or participate, directly or indirectly, in:
>         (1) The affairs of the enterprise through racketeering activity; or
>         (2) Racketeering activity through the affairs of the enterprise.

[3]NRS 207.400, NRS 207.410, NRS 207.450.

(d) Intentionally to organize, manage, direct, supervise or finance a criminal syndicate.

(e) Knowingly to incite or induce others to engage in violence or intimidation to promote or further the criminal objectives of the criminal syndicate.

(f) To furnish advice, assistance or direction in the conduct, financing or management of the affairs of the criminal syndicate with the intent to promote or further the criminal objectives of the syndicate.

(g) Intentionally to promote or further the criminal objectives of a criminal syndicate by inducing the commission of an act or the omission of an act by a public officer o[r] employee which violates his official duty.

(h) To conspire to violate any of the provisions of this section.

2. Any person who violates this section shall be punished by imprisonment in the state prison for not less than 5 years nor more than 20 years, and may be further punished by a fine of not more than $25,000.

Having reviewed the Nevada statutory scheme as well as federal court interpretations of RICO, we conclude that for a plaintiff to recover under Nevada RICO, three conditions must be met: (1) the plaintiff's injury must flow from the defendant's violation of a predicate Nevada RICO act; (2) the injury must be proximately caused by the defendant's violation of the predicate act; and (3) the plaintiff must not have participated in the commission of the predicate act.

## A. Predicate act requirement

It is well-settled that to have standing as a RICO plaintiff, one's injury must flow from the violation of a predicate RICO act.[4] *Cf.* Hale v. Burkhardt, 104 Nev. 632, 764 P.2d 866 (1988). Allum originally alleged that VMC violated NRS 207.360(26), which then provided that "'Crime related to racketeering' means the commission of, attempt to commit or conspiracy to commit . . . [o]btaining possession of money or property valued at $100 or more . . . by means of false pretenses." This crime, alleged Allum, was perpetrated against "investors seeking FHA quality loans." Crucially, the crime was not committed against Allum.

---

[4]Sedima v. Imrex Co., 473 U.S. 479 (1985); Miranda v. Ponce Fed. Bank, 948 F.2d 41 (1st Cir. 1991); Hecht v. Commerce Clearing House, Inc., 897 F.2d 21 (2d Cir. 1990); Cullom v. Hibernia Nat'l Bank, 859 F.2d 1211 (5th Cir. 1988); Reddy v. Litton Indus. Inc., 912 F.2d 291 (9th Cir. 1990); Morast v. Lance, 807 F.2d 926 (11th Cir. 1987).

This issue has been addressed by numerous courts reviewing alleged violations of RICO. Indeed, the context of virtually every Court of Appeals decision cited in footnote 4, supra, was wrongful termination. Further, those cases arose following successful motions to dismiss. Because one of those cases, Reddy v. Litton Indus. Inc., 912 F.2d 291 (9th Cir. 1990), is especially helpful in gaining an understanding of the issue at hand, a review of that case follows.

Reddy was employed by Litton Industries, Inc. ("Litton") which was engaged in selling military hardware to Saudi Arabia. Reddy discovered an unlawful payment scheme between Litton and certain Saudi officials. Reddy reported the scheme to his superiors, who thereafter terminated Reddy's employment. Reddy sued Litton, alleging that he was wrongfully terminated because he refused to cover-up the illegal activity. Litton moved to dismiss for failure to state a claim. The federal district court found that Reddy lacked standing and granted Litton's motion with prejudice. Reddy appealed. *Reddy,* 912 F.2d at 292-93.

The United States Court of Appeals for the Ninth Circuit affirmed. After noting that only harm caused by a predicate RICO act was compensable, the court stated:

> All of the circuit courts that have considered this issue have held that an employee who is wrongfully discharged for refusing to participate in an alleged pattern of racketeering activity lacks standing to sue under § 1962(c). . . .
>
> Accordingly, we hold that Reddy lacks standing to sue under § 1962(c) because the injury he suffered was the result of his alleged wrongful termination and was not caused by predicate RICO acts.

*Reddy,* 912 F.2d at 294.

Like the plaintiff in *Reddy,* Allum's injury flowed from his wrongful termination. Wrongful termination, however, is not a predicate Nevada RICO act. Allum therefore lacks standing to sue under NRS 207.470(1).

B. Proximate cause

To recover under RICO, not only must the plaintiff's injury flow from a predicate act, but the plaintiff must show that the defendant's RICO violation proximately caused the plaintiff's injury. The most recent pronouncement in this area was made in Holmes v. Securities Investor Protection Corp., 112 S.Ct. 1311 (1992).

*Holmes* dealt with damages suffered by the Securities Investor Protection Corporation ("SIPC"). In 1970, Congress authorized the formation of SIPC by enacting the Securities Investor Protec-

tion Act, 15 U.S.C. §§ 78aaa-78lll. SIPC is a private nonprofit corporation of which most broker-dealers registered under § 15(b) of the Securities Exchange Act are required to join. Should SIPC determine that a member is unable to meet its obligations to its customers, SIPC may seek a "protective decree" in federal district court. Upon granting the petition, the district court appoints a trustee charged with liquidating the member's business. *Holmes,* 112 S.Ct. at 1314.

The trustee first returns all securities to their registered owners. Securities not registered to a customer are pooled together and divided ratably to satisfy customers' claims. Should the amount in the pool be inadequate to cover the claims, SIPC must advance up to $500,000 per customer to satisfy those claims. *Id.*

Following a fraudulent manipulation scheme, SIPC advanced nearly $13 million to satisfy claims of injured customers. SIPC and the appointed trustees sued Holmes and others, alleging that defendants had conspired with others in a fraudulent stock manipulation scheme in violation of the Securities Exchange Act of 1934 and that this conduct amounted to a pattern of racketeering activity within the meaning of RICO. *Id.* at 1315.

The district court entered summary judgment for Holmes, partly on the ground that SIPC had failed to satisfy RICO's proximate cause requirement. The Ninth Circuit reversed, rejecting the district court's analysis. The Supreme Court granted certiorari and reversed. *Id.* at 1315-16.

The RICO provision in issue stated that:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c) (1988).[5]

The Supreme Court acknowledged that this language could be interpreted to permit a plaintiff to recover simply by showing that he was injured "by reason of" a RICO violation and that the defendant's RICO violation was a "but for" cause of his injury. *Holmes,* 112 S.Ct. at 1316. The Court recognized, however, that it was very unlikely that Congress meant to allow all factually injured plaintiffs to recover because the "by reason of" language of § 1964(c) was modeled after the Clayton Act which had long been interpreted to require proximate causation as a requisite to sue. *Id.* at 1316-18.

---

[5]The similarities between NRS 207.470(1) and 18 U.S.C. § 1964(c) are clear.

The practical reason for requiring proximate causation under RICO was explained by the Court thusly:

> Here we use "proximate cause" to label generically the judicial tools used to limit a person's responsibility for the consequences of that person's own acts. At bottom, the notion of proximate cause reflects "ideas of what justice demands, or of what is administratively possible and convenient." Accordingly, among the many shapes this concept took at common law . . . was a demand for some direct relation between the injury asserted and the injurious conduct alleged. Thus, a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover.

*Holmes,* 112 S.Ct. at 1318 (citations omitted). In other words, to sue under RICO, the plaintiff's injury must be directly caused by the defendant's violation of a predicate RICO act. In most cases, the plaintiff will be the victim of the predicate act. Because our legislature patterned Nevada RICO after RICO, we conclude that the Nevada legislature intended a like result. Accordingly, we hold that to bring suit under Nevada RICO, the plaintiff's damages must be proximately caused by defendant's violation of a predicate Nevada RICO act.

As discussed, the predicate act alleged by Allum was obtaining money by false pretenses. Hence, the injuries, if any, of the *investors* whose money was taken by VMC were proximately caused by a violation of a predicate act. Allum's loss of income, however, was caused by his termination following his refusal to perpetuate the predicate act. Allum was not the victim of the predicate act, and his loss of income was not proximately caused by the predicate act. Accordingly, Allum does not have a cause of action under Nevada RICO.

## C. Participation in the scheme

Allum alleged that VMC violated NRS 207.400(1)(g), which provides that it is unlawful for any person to intentionally "promote or further the criminal objectives of a criminal syndicate by inducing the commission of an act or the omission of an act by a public officer o[r] employee which violates his public duty." Allum claims that his post as an FHA underwriter qualified him as a public officer and that notwithstanding the fact that he participated in the scheme by underwriting the D.E. Program loans, he has standing under Nevada RICO to sue those who induced him to violate his public duty.

We need not decide whether Allum was a public officer because his participation in the illegal scheme, even though perhaps against his will, precludes him from recovering for damages caused by the scheme. We find the reasoning of the district court persuasive:

> [T]he implication of Plaintiff's argument is that our legislature intended that a public official or employee who is induced to violate his or her official duties should be permitted to recover treble damages from the persons inducing the violation. The Court does not accept this argument. Rather, for purposes of NRS 207.400(1)(g), the civil remedy afforded by NRS 207.470(1) is available to those persons who suffer injury in their business or person as a result of the official's violation of his duties. The civil remedy provision in NRS 207.470(1) is not available to the official who violates his or her official duties.

We doubt that the legislature intended for one knowingly involved in an illegal scheme to be able to recover from the scheme's other participants. Because Allum participated in the illegal scheme by virtue of his underwriting, we conclude that he cannot rely on Nevada RICO to recover treble damages from VMC.

Allum argues on appeal that the district court erred by dismissing his claim with prejudice. A district court's decision not to grant leave to amend will not be disturbed absent an abuse of discretion. Nelson v. Sierra Constr. Corp., 77 Nev. 334, 343, 364 P.2d 402, 406 (1961). Any attempt by Allum to amend his Nevada RICO claim would have been futile: "It is not an abuse of discretion to deny leave to amend when any proposed amendment would be futile." *Reddy,* 912 F.2d at 296. We affirm the judgment of the district court.