141 Nev., Advance Opinion 26

THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| IN THE MATTER OF THE PUBLIC RECORDS REQUESTS TO LAS VEGAS METROPOLITAN POLICE DEPARTMENT. | No. 85598 |



LAS VEGAS METROPOLITAN POLICE DEPARTMENT,
Appellant/Cross-Respondent,
vs.
KATHRYN MAYORGA,
Respondent/Cross-Appellant,
and
LAS VEGAS REVIEW-JOURNAL, INC.;
AMERICAN CIVIL LIBERTIES UNION
OF NEVADA; AND CRISTIANO
RONALDO,
Respondents/Cross-Respondents.

Appeal and cross-appeal from a district court order dismissing a petition for judicial confirmation and denying a countermotion for declaratory relief. Eighth Judicial District Court, Clark County; Jasmin D. Lilly-Spells, Judge.

*Affirmed.*

Marquis Aurbach Chtd. and Nicholas D. Crosby, Las Vegas,
for Appellant/Cross-Respondent Las Vegas Metropolitan Police Department.

American Civil Liberties Union of Nevada and Christopher M. Peterson and Sophia A. Romero, North Las Vegas,
for Respondent/Cross-Respondent American Civil Liberties Union of Nevada.

 

25- 23923

Christiansen Trial Lawyers and Peter S. Christiansen, Kendelee L. Works, and Keely P. Chippoletti, Las Vegas,
for Respondent/Cross-Respondent Cristiano Ronaldo.

McLetchie Law and Margaret A. McLetchie and Leo S. Wolpert, Las Vegas,
for Respondent/Cross-Respondent Las Vegas Review-Journal, Inc.

Stovall & Associates and Leslie Mark Stovall, Las Vegas,
for Respondent/Cross-Appellant Kathryn Mayorga.

---

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, PICKERING, J.:

The Judicial Confirmation Law (JCL) allows municipalities to petition the district court for an early determination of the validity of a municipal action. Appellant Las Vegas Metropolitan Police Department (LVMPD) filed a petition under the JCL seeking a determination as to its disclosure obligations under the Nevada Public Records Act (NPRA) after various media outlets requested records. But because LVMPD is not a municipality within the plain terms of the JCL, it could not seek relief under that law. Nor could LVMPD amend its petition to assert a claim for declaratory relief where the NPRA, on this record, does not allow LVMPD to do so. The district court therefore properly dismissed LVMPD's JCL petition and denied its motion to amend.

I.

In 2009, Kathryn Mayorga reported to LVMPD that she had been sexually assaulted, but because no person of interest was identified,

the criminal investigation was closed. Mayorga meanwhile privately reached a confidential settlement agreement with her alleged assailant—Portuguese soccer star Christiano Ronaldo—resolving any claims between them.

Years later, a German news outlet published a story on the incident and settlement agreement, based on information in documents obtained from whistleblower outlet Football Leaks. Mayorga's counsel subsequently obtained those documents from Football Leaks—documents Ronaldo maintains were illegally obtained and contained privileged communications between him and his attorneys concerning the 2009 settlement—and provided them to LVMPD with a request to reopen its criminal investigation. The district attorney declined to prosecute.

Mayorga then sued Ronaldo in federal district court for money damages. The federal court granted a protective order, preventing public disclosure of any discovery that contained confidential information. Ronaldo's counsel subpoenaed LVMPD's criminal investigative file, which LVMPD provided subject to that protective order. The federal court eventually agreed the Football Leaks documents are privileged and dismissed Mayorga's case with prejudice as a sanction for building her case on the confidential and privileged material obtained from Football Leaks.

While the federal case was ongoing, various media outlets made NPRA requests for LVMPD's investigative file. LVMPD initially agreed to provide a redacted version of the investigative file, though not any privileged records. Because the requested records were subject to a protective order, LVMPD informed Mayorga and Ronaldo of its intent to provide the redacted investigation file to the media. Mayorga and Ronaldo each moved in federal court to prevent that release. Ronaldo claimed the

investigative file should not be disclosed because it contained privileged and confidential information. Mayorga sought partial protection for any potentially privileged documents until the federal case was resolved.

Instead of releasing the redacted file, LVMPD filed a petition under the JCL in the Eighth Judicial District Court, seeking a determination of its disclosure obligations under the NPRA. LVMPD also moved in federal court to clarify whether the protective order barred it from disseminating the investigative file. All participants in the federal case agreed that the state court should decide the NPRA issue. The federal court clarified that the protective order did not prevent LVMPD from disseminating the investigative file and, citing NRS 239.011, agreed the Eighth Judicial District Court should decide whether LVMPD is obligated by the NPRA to release the file.

The Las Vegas Review-Journal (LVRJ) and the American Civil Liberties Union of Nevada (ACLU) filed notices of appearance in the state court action and moved to dismiss the petition for failure to state a claim, under NRCP 12(b)(5). LVMPD opposed the motions and moved to amend its petition to assert a claim for declaratory relief. Mayorga filed an answer and counterclaim seeking declaratory relief that the Football Leaks documents are not privileged.

The district court dismissed the JCL petition on the basis that LVMPD is not authorized by the JCL to institute proceedings under that law. The district court also denied LVMPD's motion to amend on the grounds that the NPRA provides the exclusive means of resolving public records disputes and that, because any legal interest hinged on future events, LVMPD failed to present a justiciable controversy. The district court dismissed Mayorga's counterclaim, concluding her arguments

Supreme Court
of
Nevada

(O) 1947A

4

concerning the Football Leak documents were precluded by the federal court's decision. LVMPD appeals, and Mayorga cross-appeals.

## II.

### A.

An order granting a motion to dismiss under NRCP 12(b)(5) is subject to a rigorous de novo review, with all facts alleged by the nonmoving party presumed true and all inferences drawn in favor of that party. *Buzz Stew, LLC v. City of North Las Vegas*, 124 Nev. 224, 227-28, 181 P.3d 670, 672 (2008). Denial of leave to amend is reviewed for an abuse of discretion. *Allum v. Valley Bank of Nev.*, 109 Nev. 280, 287, 849 P.2d 297, 302 (1993). Questions of law, including statutory interpretation, are reviewed de novo. *Las Vegas Metro. Police Dep't v. Blackjack Bonding, Inc.*, 131 Nev. 80, 85, 343 P.3d 608, 612 (2015).

A statute's provisions should be interpreted harmoniously, and the text should be construed as a whole. *Tough Turtle Turf, LLC v. Scott*, 139 Nev., Adv. Op. 47, 537 P.3d 883, 886 (2023). If a statute's language is unambiguous, its plain meaning controls. *Las Vegas Review-Journal v. Las Vegas Metro. Police Dep't*, 139 Nev. 69, 76, 526 P.3d 724, 733 (2023). When a statutory provision is ambiguous, its meaning may be determined by examining the provision as a whole, looking to the context, the subject matter, and the policy involved. *See Leven v. Frey*, 123 Nev. 399, 405, 168 P.3d 712, 716 (2007).

### B.

The JCL provides municipalities with a nonadversarial mechanism to obtain a judicial determination of the validity of an anticipated municipal action. NRS 43.020(1). The municipality's "governing body" may seek this advisory opinion. NRS 43.100(1).

At issue here, the JCL defines "municipality" as:

the State of Nevada, or any corporation, instrumentality or other agency thereof, or any incorporated city, any unincorporated town, or any county, school district, conservancy district, drainage district, irrigation district, general improvement district, other corporate district constituting a political subdivision of this State, housing authority, urban renewal authority, other type of authority, the Nevada System of Higher Education, the Board of Regents of the University of Nevada, or any other body corporate and politic of the State of Nevada, but excluding the Federal Government.

NRS 43.080. And in relevant part, the JCL defines "governing body" as:

(a) The state commission or state board responsible for the exercise of a power by the State or responsible for an instrument, act or project of the State to which court proceedings authorized by this chapter and initiated by the State pertain; and

(b) The city council, city commission, board of supervisors, board of commissioners, board of trustees, board of directors, board of regents or other legislative body of a municipality proceeding under this chapter.

NRS 43.060(1). The legislature has declared that because its provisions serve a public function, the JCL must be "liberally construed to effect the purposes and objects for which it is intended." NRS 43.020(4).

LVMPD makes a novel argument in contending that a metropolitan police department is a "municipality" with a "governing body" that may file a JCL petition under NRS Chapter 43. Pointing to NRS Chapter 43's mandate for liberal construction, LVMPD analogizes NRS Chapter 43 to NRS Chapter 41, arguing that because LVMPD falls within NRS Chapter 41's definition of a "political subdivision," LVMPD must

SUPREME COURT
OF
NEVADA

(O) 1947A

6

likewise be considered a political subdivision for JCL purposes and thus a municipality under NRS 43.080. LVMPD also contends the JCL's definition of municipality encompasses "any corporation, instrumentality or other agency" of the State of Nevada and therefore includes metropolitan police departments. *See* NRS 43.080. It asserts that the sheriff qualifies as a "legislative body" under NRS 43.060 that may allow a JCL petition to be filed under NRS 43.100.

This argument is untenable for several reasons. First, because the JCL defines "municipality," that definition controls. *See* NRS 43.080 (explaining that unless context requires otherwise, the definitions in NRS 43.040 to .090 control); *cf. Boulder Oaks Cmty. Ass'n v. B&J Andrews Enters., LLC*, 125 Nev. 397, 406, 215 P.3d 27, 32-33 (2009) (explaining that a statutory definition is controlling). A "municipality" is any "corporation, instrumentality or other agency" of "the State of Nevada," and NRS 43.080 lists various agencies, districts, and authorities—but not police departments—as falling within that definition. Key here, the statute's catch-all provisions characterize "municipalities" as including either "other corporate district[s] constituting political subdivision[s] of this State" or other "corporate and politic" State bodies. Were NRS 43.080's opening language as broad as LVMPD contends, there would be little need for NRS 43.080's catch-all provisions, since those entities would already be captured within the broader definition. Instead, the catch-all language indicates that a "municipality" under the JCL is more narrow: a geographically bound state body with authority to act under the law as a single legal entity pertaining to politics and the conduct of government. *See Corporation, Political,* and *District, Black's Law Dictionary* (12th ed. 2024). This generally tallies with the well-worn definition of a municipality as "[a] city,

town, or other local political entity with the powers of self-government." *Municipality, Black's Law Dictionary* (12th ed. 2024).

The JCL imposes another qualification: a municipality must have a governing body that can file the petition or direct one to be filed. *See* NRS 43.100. The JCL's definition of "governing body" states that it must be either a state commission or state board responsible for exercise of state power, or a body with comparable powers and duties at the city or county level, such as a city council or board of regents. NRS 43.060. This connotes a *group* of individuals, not a single individual. *See also Governing Body, Black's Law Dictionary* (12th ed. 2024) ("A group of (esp. corporate) officers or persons having ultimate control").

Reading these statutes together, a municipality for purposes of the JCL is a state entity, with a group forming a governing body, that is (1) among those entities listed in NRS 43.080, (2) any other corporate district constituting a political subdivision, or (3) any corporate and politic entity. And on balance, LVMPD falls short of showing it is a municipality within the confines of the JCL. LVMPD has not persuasively argued that it is a corporate district constituting a political subdivision or some other "corporate and politic" entity. Rather, LVMPD is a local governmental department.[1] *See* NRS 280.010 (stating that the purpose of NRS Chapter 280 is to merge city and county law enforcement agencies into county-wide

---

[1]Although LVMPD argues that it is a "political subdivision," we note NRS Chapter 280 defines both "department" and "political subdivision" and that these separate definitions indicate that LVMPD (a "department") is not considered a "political subdivision" under NRS Chapter 280, even if it sometimes exercises the powers of one. *See* NRS 280.050 (defining "[d]epartment" as a metropolitan police department); NRS 280.080 (defining "[p]olitical subdivision" as a county or incorporated city or town).

SUPREME COURT
OF
NEVADA

(O) 1947A

metropolitan police departments); NRS 280.280 (transferring power from cities and counties to the newly created police departments); Clark County Code 2.60.010 (forming LVMPD); City of Las Vegas Municipal Code 2.24.030 (same). Nor has LVMPD shown that it has a "governing body" that may institute a JCL petition. While the department has power to enter contracts as necessary to operate and maintain itself, it must first obtain approval from the metropolitan police committee on fiscal affairs, which is staffed by members drawn from the cities or counties served by the police department. NRS 280.280(2); *see also* NRS 280.045 (defining committee); NRS 280.130 (establishing the committee's composition); NRS 280.080 (defining "[p]olitical subdivision"). But it is the sheriff, not the committee, who adopts rules and regulations for the department, indicating LVMPD has no "governing body" that could file a petition under the JCL. NRS 280.307. Although LVMPD attempts to cast the sheriff as a "governing body" because the sheriff is the department's final policymaker, this carries NRS 43.060's definition too far where LVMPD is not governed by a state or city commission, council, board, or other similar legislative body.

To the extent LVMPD argues that the JCL predates statutorily created agencies and that the legislative language should be read to encompass structures not in existence at the time NRS Chapter 43 became law, this argument lacks merit. The JCL's directive that its provisions be liberally construed to effect its purpose does not warrant contorting the JCL's definitions. *See McKay v. Bd. of Cnty. Comm'rs*, 103 Nev. 490, 492, 746 P.2d 124, 125 (1987) ("[I]t is not the business of this court to fill in alleged legislative omissions based on conjecture as to what the legislature would or should have done."). If the legislature wished to expand the JCL to encompass entities that do not fall within its original definitions, it could

SUPREME COURT
OF
NEVADA

(O) 1947A

9

have amended the JCL accordingly, but thus far it has not. Accordingly, the district court did not err by dismissing LVMPD's JCL petition.

C.

LVMPD next argues that the district court erred by denying its motion for leave to amend its petition to state a claim for declaratory relief. It contends that the competing demands by the LVRJ, Mayorga, and Ronaldo create a justiciable controversy as to whether the NPRA requires it to disclose the investigative file. Further, LVMPD argues that nothing in the NPRA expressly bars it from seeking declaratory relief and that NRS 239.011(4) expressly allows other "rights and remedies" and thus supports LVMPD's ability to seek equitable relief here.

The NPRA provides that "unless otherwise declared by law to be confidential, all public books and public records of a governmental entity must be open at all times during office hours to inspection by any person[.]" NRS 239.010(1). Because its purpose is to facilitate prompt access to public records, any limits on that access are narrowly construed. NRS 239.001(2)-(3).

Only one provision in the NPRA directly addresses whether the Act provides an exclusive remedy: NRS 239.011(4) states that "[t]he rights and remedies provided in this section are in addition to any others in law or equity." LVMPD quotes this language to support its argument that the NPRA does not limit its right to seek declaratory relief as to its disclosure obligations. We do not agree. The phrase "rights and remedies provided in this section" refers to NRS 239.011 specifically, and that section only provides rights and remedies to the record requester in the event the government entity denies or unreasonably delays a record request. See NRS 239.011(1)-(3). It follows that subsection 4 likewise concerns the requester's

rights and remedies rather than those of the governmental entity. *See Leven*, 123 Nev. at 405, 168 P.3d at 716 (explaining that a statute's provisions are read together and in context). Thus, though the NPRA gives the requester rights and remedies in addition to those the requester might already have, NRS 239.011(4) is silent as to the governmental entity.

Whether a public records act bars a governmental entity from initiating judicial proceedings in response to a records request has been addressed in other jurisdictions—without consensus. In *City of Garland v. Dallas Morning News*, the Texas Supreme Court affirmed that the governmental entity could seek declaratory relief under Texas's public information law. 22 S.W.3d 351, 358 (Tex. 2000). There, a city denied a newspaper requester access to a memo and then sought declaratory relief. *Id.* Noting that state courts routinely decide declaratory relief claims in records cases from both requesters and the government, the court reasoned that the Texas public records act did not expressly prohibit the city's right to seek declaratory relief. *Id.* at 357. Construing that act as nevertheless barring declaratory relief would be, in the Texas court's words, "a strained reading" and could turn the court into an arbiter of policy. *Id.* at 357-58. The Vermont Supreme Court reached a similar conclusion in *Burlington School District v. Provost*, where it determined that a school district could sue for declaratory relief against a requester because nothing in the state's public records act expressly barred that relief. 224 A.3d 841, 846 (Vt. 2019).

The California Supreme Court, conversely, has interpreted the California public record act as providing an exclusive remedy that bars the governmental entity from seeking declaratory relief. *Filarsky v. Super. Ct.*, 49 P.3d 194, 195 (Cal. 2002). In *Filarsky*, a city rejected a records request, and the requester threatened suit, upon which the city successfully obtained

 

declaratory relief against the requester. *Id.* at 195-96. In considering the propriety of the city's suit, that court carefully parsed the text and purpose of its public records act and highlighted several strong policy concerns, including encouraging prompt access to public information. *Id.* at 195, 198. That court accordingly determined that California's public records act established the exclusive means by which the governmental entity could litigate the propriety of a public records request. *Id.* at 195, 202. *See also City of Santa Rosa v. Press Democrat*, 232 Cal. Rptr. 445, 450 (Ct. App. 1986) (noting that "to subject a requester of information to a potential civil action" would not promote the goals of disclosure but "would be at war with the very purpose of the CPRA and would effectively discourage requests for disclosure"). New Jersey and North Carolina have reached similar conclusions. *See Matter of N.J. Firemen's Ass'n Obligation to Provide Relief Applications Under Open Pub. Recs. Act*, 166 A.3d 1125, 1136-37 (N.J. 2017); *In re Death of Neville*, 872 S.E.2d 819, 822 (N.C. Ct. App. 2022).

Though the outcomes differ, this caselaw highlights the importance of weighing the NPRA's purpose and express requirements when determining whether a governmental entity may seek declaratory relief in response to a public records request. In fact, other legislatures spotting this issue have simply written statutes to address it. *See, e.g.*, D.C. Code § 2-538(e) (allowing a public body faced with a Freedom of Information Act request to seek an advisory opinion from the Office of Open Government regarding compliance); Fla. Stat. § 119.07(9) (expressly barring an agency that receives a public records request from responding to the request by filing an action for declaratory relief against the requester); Iowa Code § 22.8(1) (allowing the public record's custodian to seek an injunction); V.I. Code Ann. tit. 3, § 881(h) (allowing a district court to restrain requested

records' examination); Wyo. Stat. Ann. § 16-4-203(g) (allowing the records' custodian to seek an order from the court restricting the records' disclosure if the custodian believes disclosure "would do substantial injury to the public interest," even if the record is otherwise available for public inspection). The Nevada Legislature, unfortunately, has not.

Although nothing in the NPRA expressly precludes a governmental entity from seeking declaratory relief, the Act imposes special statutory procedures upon the governmental entity once it receives a records request. *See* NRS 239.0107(1). Namely, within five business days the governmental entity "shall" do one of the following: (1) allow inspection of or provide the record; (2) if it does not have control of the record, notify the requester and identify the entity with control, if known; (3) if the record is unavailable for reasons other than confidentiality, notify and update the requester of when the record will be available and continue to make efforts to provide the record; or (4) if the record is confidential, notify the requester and cite the legal basis for confidentiality. *Id.* But if the records are readily available, the governmental entity must accommodate the request "as expeditiously as practicable." NRS 239.0107(1)(a), (2).

This statute is mandatory and, on its face, leaves the governmental entity no room for an alternative course of action. *Cf. Baldonado v. Wynn Las Vegas, LLC*, 124 Nev. 951, 965 & n.35, 194 P.3d 96, 105 & n.35 (2008) (recognizing that declaratory relief is improper where a special statutory remedy exists). The NPRA must be interpreted to facilitate prompt disclosure, NRS 239.001(1)-(2), and it follows that the Act does not allow a governmental entity to bypass NRS 239.0107 and seek declaratory relief in response to a public records request.

LVMPD initially indicated it would release the requested records, consistent with NRS 239.0107(1). Instead, it filed a petition to have the district court determine its disclosure obligations. Even if a declaratory judgment would have otherwise been available to LVMPD, *cf. Nat'l Ass'n of Mut. Ins. Cos. v. State, Dep't of Bus. & Indus., Div. of Ins.*, 139 Nev. 18, 23-24, 524 P.3d 470, 477 (2023) (addressing the requirements for a declaratory judgment); *Kress v. Corey*, 65 Nev. 1, 26, 189 P.2d 352, 364 (1948) (same), NRS 239.0107(1) forecloses that avenue here. Accordingly, the district court properly denied LVMPD's motion to amend its petition. *Cf. Allum v. Valley Bank of Nev.*, 109 Nev. 280, 287, 849 P.2d 297, 302 (1993) (explaining the court may deny a motion to amend if amendment would be futile).

## D.

In response to the JCL petition, Mayorga filed an answer and a counterclaim seeking a declaration that the Football Leaks documents are not privileged. In her cross-appeal, Mayorga argues she has standing to answer the JCL action because she has a legally protected interest as the victim of the alleged assault and in the related documents that are at issue in the JCL petition. She further contends that her counterclaim is proper because she should be allowed to prove that the federal court's privilege finding is clearly erroneous, and that issue preclusion does not bar her counterclaim. The district court's dismissal is reviewed de novo. *See Nelson v. Burr*, 138 Nev. 847, 850, 521 P.3d 1207, 1210 (2022).

Though the NPRA imposes procedural requirements upon the governmental entity that prevent it from seeking declaratory relief in response to a records request, no such requirements are imposed on a third party, and nothing in the NPRA would otherwise bar an individual who is the subject of requested reports from bringing a reverse-records action to

prevent disclosure. *See, e.g., City of L.A. v. Metro. Water Dist. of S. Cal.*, 255 Cal. Rptr. 3d 202, 211, 220 (Ct. App. 2019) (concluding that other nonstatutory actions are permissible in connection with public records requests); *Marken v. Santa Monica-Malibu Unified Sch. Dist.*, 136 Cal. Rptr. 3d 395, 408-09 (Ct. App. 2012) (holding that mandamus should be available to individuals to prevent a government entity from releasing protected records); 2 Witkin, Cal. Evid. 6th *Witnesses* § 322 (2024) (recognizing reasons for allowing reverse actions in the public records context). Here, however, Mayorga has not filed a reverse-records action. Instead, she seeks to answer LVMPD's petition and assert a counterclaim. But because LVMPD may neither bring a JCL petition nor amend its petition to include a claim for declaratory relief, there is nothing for Mayorga to answer.

Nor does Mayorga's counterclaim stand. Though a counterclaim may survive the original petition's dismissal, LVMPD did not name Mayorga as a party to its JCL petition, and one who is not a party is not eligible to file a counterclaim. *See* NRCP 13 (allowing counterclaims "against an opposing party"); *Pelletier v. Pelletier*, 103 Nev. 408, 409, 742 P.2d 1027, 1027 (1987) (explaining that a person who is not a party to the action may not file a counterclaim in the action); *Great W. Land & Cattle Corp. v. Sixth Jud. Dist. Ct.*, 86 Nev. 282, 284, 467 P.2d 1019, 1021 (1970) (explaining that a counterclaim is a separate action and is severable from the original complaint). Next, Mayorga—who is arguing against Ronaldo's position that the documents are privileged, not against LVMPD's request for a judicial determination—is not an adverse party who may seek declaratory relief. *See Knittle v. Progressive Cas. Ins. Co.*, 112 Nev. 8, 10, 908 P.2d 724, 725 (1996) (setting forth the prerequisites to declaratory

relief).  Finally, Mayorga's counterclaim seeks a declaration that the Football Leaks documents are not privileged, but the federal court previously determined the Football Leaks documents are privileged and dismissed her federal case accordingly, so Mayorga's arguments are barred by issue preclusion.[2] *See Paulos v. FCH1, LLC*, 136 Nev. 18, 23-25, 456 P.3d 589, 593-95 (2020) (addressing issue preclusion flowing from federal court decisions); *Five Star Cap. Corp. v. Ruby*, 124 Nev. 1048, 1055, 194 P.3d 709, 713 (2008) (setting forth the factors for issue preclusion).  Dismissal was therefore proper.

## III.

The Judicial Confirmation Law permits municipalities to petition the district court for an early judicial determination of the validity of a municipal act, but because LVMPD fails to show it is a municipality, the district court properly concluded it could not file a petition under that law.  The district court also correctly denied LVMPD's motion to amend its

---

[2]Further, applying issue preclusion here is not contrary to the purposes of the NPRA, and special circumstances do not exist to warrant an exception to issue preclusion.  In addition, Mayorga did not raise her First Amendment argument in her oppositions below, but it, too, primarily seeks to reargue points raised before the federal court and fails to show why the presented law, which pertains primarily to the rights of the press, supports an individual's right to overturn a privilege determination. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (declining to address issues that were not cogently argued); *Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) (explaining issues raised for the first time on appeal ordinarily will not be considered).

SUPREME COURT
OF
NEVADA

(O) 1947A

16

petition to add a claim for declaratory relief and properly dismissed Mayorga's answer and counterclaim. We therefore affirm.

_____, J.
Pickering

We concur:

_____, C.J.
Herndon

_____, J.
Parraguirre

_____, J.
Bell

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Lee

SUPREME COURT
OF
NEVADA

(O) 1947A