*1387 OPINION
By the Court,
Rose, J.:
Appellant Lawrence Hall filed a complaint against respondents alleging several causes of action, including the negligent training, supervision, and retention of employees. Hall sought compensatory and punitive damages, including future medical damages, for injuries sustained when respondent John Handka, a security guard employed by respondent SSF, Inc. (SSF), hit Hall in the jaw. The district judge found for Hall and against respondents Handka and SSF on theories of intentional assault and battery and respondeat superior, awarded Hall damages for past medical bills, but refused to award him damages for future medical expenses. The district judge also refused to hear certain evidence regarding the negligent hiring, training, supervision, and retention claim and ultimately found against Hall on that claim.
We conclude that the district judge erred in refusing to award damages for future medical expenses and also in refusing to consider evidence relevant to Hall’s claim for negligent hiring, training, supervision, and retention.

FACTS

In March 1992, plaintiif/appellant Hall was in Reno to participate in a fire protection training class. He and several other members of the class decided to go to the Limelite, a local night club owned by SSF, a Nevada corporation. At the time, respondents A. Razak Salaho, Michelle F. Sonner, and Martin F. Fogel, Jr. were officers and directors of SSF. Respondent Paul Sonner (Paul) was the Limelite’s manager, and Handka was one of the Limelite’s doormen (aka bouncers).
Hall and the others in the group were under the mistaken impression that the Limelite would not be collecting a cover charge that evening. When the group arrived at the Limelite, they learned of the cover charge, paid it, and entered the night club. Shortly thereafter, the group determined that there was “no activity whatsoever” inside, and they decided to leave. Hall and the others requested a refund of their cover charge, and Paul, the Limelite’s manager, refused.
Paul testified that Hall and seven other members of the group remained in the small vestibule of the Limelite arguing for the return of the group’s cover charge. Paul, who was on the phone at the time, asked the group to wait until he finished his call. Someone from the group then reached into the cashier’s area, disconnected the phone, and told Paul that “we’re talking to you *1388 now.” Paul then requested that Handka and two other doormen remove the group from the club.
Handka testified that in response to Paul’s request, he and the two other doormen began escorting the group from the club. The group engaged in heated words with the bouncers while inside the club and continued to argue with Handka after they were escorted outside of the club. Handka testified that when he perceived someone approaching him in what he thought was a menacing manner, he struck out with his fist, hitting Hall in the right jaw area. Handka further testified that he believed he was in danger and struck out in self-defense. Hall testified that when he turned around to see who had hit him, Handka was jumping up and down, challenging Hall to a fight.
Hall, complaining of pain in his right jaw area and neck, sought treatment from Dr. Bryan Keropian, D.D.S. Dr. Keropian diagnosed Hall with a displaced disk in the right temporomandi-bular joint (TMJ). Dr. Keropian prescribed an oral orthotic (mouthpiece) for use by Hall. This orthotic, over a period of time, resolved all of Hall’s pain symptoms, and Hall began wearing the device only at night.
Dr. Keropian testified that Hall suffered from a “slipped disk” between the upper and lower jaw bones in the TMJ. He also testified that the orthotic device prescribed for Hall was not intended to move a slipped disk back into proper position between the upper and lower jaws; it merely aligned the jaw bones in a position that caused the surrounding muscles and ligaments to relax, thereby eliminating the source of pain. The problem was that during the day, when the orthotic was not being used, the jaw bones rubbed together without the protection of the normally interposed disk. Without the disk in proper position, the jaw bones were only protected by a very thin ligament, which, over time, may be worn away so that the upper and lower jaw bones begin to rub together.
Dr. Keropian testified that orthodontics, including surgery, may be used to correct this situation on a more permanent basis. Dr. Keropian testified, however, that a “high percentage” of patients that go to orthodontics do not have surgery. However, Dr. Keropian testified: “Off the top of my head, I would say that my thoughts were that [Hall’s treatment] was not going to include surgery, but I’m not the orthodontist.”
Dr. Keropian referred Hall to an orthodontist, Dr. Emmanuel Wasserman. Dr. Wasserman prescribed orthodontics and, ultimately, surgical intervention. Dr. Wasserman testified that the course of treatment prescribed for Hall, including surgery, was absolutely necessary. Dr. Wasserman also testified that orthotics, *1389 such as those prescribed by Dr. Keropian, were only “interim measures” and were not a cure.
As part of the treatment plan, Hall had seven teeth extracted and skin grafts taken from the roof of his mouth, both causing substantial pain and discomfort. He was also fitted with braces, which he has worn for two years. Hall testified that he intended to undergo the recommended surgical procedure.
Hall filed his first amended complaint against respondents in November 1992. Hall alleged several causes of action sounding in tort, including intentional battery and negligent hiring, training, supervision, and retention. In March 1994, respondents Salaho, Michelle Sonner, and Fogel, the corporate officers and directors of SSF, moved for summary judgment. The district court awarded judgment in their favor, finding no basis for attributing personal liability. The matter then proceeded to a bench trial on Hall’s claims against Handka, Paul, and SSF.
After three days of trial, the district court found in favor of Paul and against Hall on all claims and for Hall and against Handka and SSF on the theories of intentional assault and battery. The district court awarded to Hall $57,782.00 in general and medical damages, but specifically did not award any damages for future medical expenses or damages relating to surgery. The district court also awarded punitive damages against Handka and SSF in the amount of $5,000.00 each, but on motion of SSF, later struck the award of punitive damages against SSF. Hall was awarded costs in the amount of $9,105.39.

DISCUSSION

Damages for Hall’s future medical expenses

Hall contends that the court erred in failing to award damages for future surgery. Respondents contend that the district court properly rejected Hall’s claim because Hall failed to establish that future surgery would be necessary to treat Hall’s condition.
“Where the trial court, sitting without a jury, makes a determination predicated upon conflicting evidence, that determination will not be disturbed on appeal where supported by substantial evidence.” Trident Construction v. West Electric, 105 Nev. 423, 427, 776 P.2d 1239, 1241 (1989). Substantial evidence is that which “ ‘a reasonable mind might accept as adequate to support a conclusion.’ ” State Emp. Security v. Hilton Hotels, 102 Nev. 606, 608, 729 P.2d 497, 498 (1986) (quoting Richardson v. Perales, 402 U.S. 389 (1971)). A district court’s determinations of fact will not be set aside unless they are “clearly erroneous.” *1390 Hermann Trust v. Varco-Pruden Buildings, 106 Nev. 564, 566, 796 P.2d 590, 592 (1990).
A successful plaintiff is entitled to compensation for all the natural and probable consequences of a defendant’s tortious conduct. Lerner Shops v. Marin, 83 Nev. 75, 423 P.2d 398 (1967). In order to establish that the future medical expenses are a natural and probable consequence of defendant’s tortious conduct, the plaintiff must establish that such future medical expenses are reasonably necessary. See Dowe v. Grady, 540 So. 2d 1040, 1046 (La. Ct. App. 1989) (absent evidence establishing “a genuine need for future medicals,” the trial court erred in awarding such damages).
Dr. Keropian, a dentist, testified generally that a high percentage of people suffering from the same injuries as Hall did not need surgery. However, Dr. Keropian stated that while he thought that Hall did not need surgery, he could not make a conclusive determination because he was not an orthodontist with special training in this area. Dr. Wasserman, the orthodontic specialist to whom Dr. Keropian deferred judgment on Hall’s case, provided uncontradicted testimony that the course of treatment prescribed for Hall, including braces and surgery, was absolutely necessary and that the orthotic devices prescribed to ease Hall’s pain were simply an interim measure, not a cure.
In denying the award for future medical damages, the district judge stated, “I don’t believe or accept that there is a probability of surgery in the plaintiff’s future.” In response to respondents’ post-trial motions, the court further stated:
The Court was very attentive during all of the testimony. The Court found, after listening to both Dr. Keropian and Dr. Wasserman, that surgery was not necessary, nor the ordinary course, for proper treatment of injuries like those Plaintiff sustained. The Court carefully assessed what was necessary and probable. There was no factual error made.
We conclude that based on the testimony given at trial, the district judge’s conclusion that Hall did not need future surgery was clearly erroneous and not supported by substantial evidence. While Dr. Keropian stated that many people in Hall’s situation did not need surgery to correct their problem, Dr. Keropian was not a specialist in this area and did not testify conclusively as to the treatment that Hall required. Instead, Dr. Keropian deferred judgement on Hall’s need for surgery to Dr. Wasserman, a specialist in this area, and Dr. Wasserman definitively stated that Hall absolutely needed surgery to correct his jaw problems. *1391 Therefore, the district judge’s conclusion that surgery was unnecessary was not supported by substantial evidence, and this case must be remanded to the district court for a new trial on this issue.

Hall’s cause of action for negligent hiring, training, supervision, and retention

Hall contends that the district judge improperly disallowed certain evidence relevant to his cause of action for negligent hiring, training, supervision, and retention. SSF contends that the district court’s findings were supported by substantial evidence and further that the district judge properly refused to admit the contended evidence.
1. Negligent hiring
The district judge initially stated that she did not believe that the pleadings were sufficient to place the defendants on notice that the issue of negligent hiring, training, supervision, and retention was being litigated. We disagree. Hall’s complaint stated:
Defendants were negligent in failing to adequately train and supervise their managing agent and employees, agents and representatives.
We have previously stated that “a complaint need only set forth sufficient facts to demonstrate the necessary elements of a claim for relief so that the defending party has adequate notice of the nature of the claim and the relief sought.” Pittman v. Lower Court Counseling, 110 Nev. 359, 365, 871 P.2d 953, 957 (1994). Additionally, we have stated that “Nevada is a notice pleading jurisdiction and we liberally construe pleadings to place matters into issue which are fairly noticed to the adverse party.” Id.
The plain language of the pleadings adequately placed respondents on notice that the issues of negligent training and supervision were being litigated. We conclude that while negligent retention was not specifically included in the complaint, it is so closely related to negligent supervision that respondents were adequately placed on notice that the issue of negligent retention would be litigated. Furthermore, while the pleadings did not specifically mention negligent hiring, the issue was litigated at the bench trial, and both parties examined witnesses regarding the circumstances surrounding Handka’s hiring. NRCP 15(b) states that when issues not raised by the pleadings are tried by express or implied consent of the parties, the issues shall be treated as if they were raised in the pleadings. The defense made no objection to *1392 the questions regarding negligent hiring, and therefore the issue was tried by implied consent. As such, we conclude that respondents were on notice that the issues of negligent hiring, training, supervision, and retention were being litigated.
The district judge also stated that even if the pleadings were sufficient, Hall presented insufficient evidence on this issue. “The tort of negligent hiring imposes a general duty on the employer to conduct a reasonable background check on a potential employee to ensure that the employee is fit for the position.” Burnett v. C.B.A. Security Service, 107 Nev. 787, 789, 820 P.2d 750, 752 (1991). An employer breaches this duty when it hires an employee even though the employer knew, or should have known, of that employee’s dangerous propensities. Kelley v. Baker Protective Services, Inc., 401 S.E.2d 585, 586 (Ga. Ct. App. 1991).
By the very nature of the job, a bouncer has significant interaction with the public and is routinely placed in confrontational situations with patrons. Therefore, hiring a bouncer who is known to have violent propensities would likely be a breach of the duty to ensure that the employee is fit for the job. See Connes v. Molalla Transport System, Inc., 831 P.2d 1316, 1321 (Colo. 1992) (stating that “liability [for negligent hiring] is predicated on the employer’s hiring of a person under circumstances ante-cedently giving the employer reason to believe that the person, by reason of some attribute of character or prior conduct, would create an undue risk of harm to others in carrying out his or her employment responsibilities”); Yunker v. Honeywell, Inc., 496 N.W.2d 419, 422 (Minn. Ct. App. 1993) (stating that negligent hiring liability is imposed “when the employer knew or should have known that the employee was violent or aggressive and might engage in injurious conduct”).
Hall attempted to discover facts regarding the circumstances surrounding Handka’s hiring but was frustrated in his attempts because SSF had been dissolved shortly after the incident at issue and its records and files had been destroyed. At trial, Hall attempted to introduce into evidence the fact that Handka had been discharged less than honorably from the military for striking a superior officer. The district judge sustained respondents’ objection that the evidence was inadmissible as irrelevant and as improper character evidence. The district judge permitted Hall to make an offer of proof on this issue, which Hall did.
The decision to admit or exclude testimony rests within the *1393 sound discretion of the trial court and will not be disturbed unless it is manifestly wrong. Daly v. State, 99 Nev. 564, 567, 665 P.2d 798, 801 (1983). We conclude that the district judge’s decision to exclude the testimony was manifestly wrong. The evidence, which may have been improper character evidence regarding the issue of whether Handka tortiously hit Hall, was still relevant to the issue of negligent hiring because it would have aided the district judge in determining whether Handka had violent propensities and whether SSF knew or should have known of those violent propensities. Therefore, the case must be remanded for a new trial on the issue of negligent hiring, and the district judge must consider evidence of Handka’s alleged prior violence as part of the determination of whether SSF was negligent when it hired Handka.
2. Negligent training, supervision, and retention
Hall also alleged that SSF failed to use reasonable care in training, supervising, and retaining Handka. In Nevada, a proprietor owes a general duty to use reasonable care to keep the premises in a reasonably safe condition for use. Moody v. Manny’s Auto Repair, 110 Nev. 320, 331-33, 871 P.2d 935, 942-43 (1994). As is the case in hiring an employee, the employer has a duty to use reasonable care in the training, supervision, and retention of his or her employees to make sure that the employees are fit for their positions. See 27 Am. Jur. 2d Employment Relationship §§ 475-76 (1996).
Hall tried to question Handka regarding five other fights that Handka had been in, but the judge sustained opposing counsel’s objection on the ground that the question called for improper character evidence and did not let Handka answer the question. We conclude that such a ruling was manifestly wrong because while the evidence might have been improper character evidence regarding the issue of whether Handka tortiously hit Hall, it was certainly relevant on the issue of negligent training, supervision, and retention. Handka’s testimony regarding when and where the fights occurred would have provided the district judge with information needed to determine whether SSF was aware of Handka’s actions and whether SSF had acted negligently in training, supervising, and retaining Handka. Therefore, the case must be remanded for a new trial on the issues of negligent training, supervision, and retention, the district judge must permit testimony regarding Handka’s prior fights, and the district judge must consider such evidence when determining whether SSF acted negligently in training, supervising, and retaining Handka.

*1394
CONCLUSION

We therefore conclude that this case must be reversed regarding the issues of future damages and negligent hiring, training, supervision, and retention and that a new trial must be conducted on those issues. However, because we conclude that all of Hall’s other arguments on appeal lack merit, we affirm the remainder of the district court’s rulings.
Steffen, C. J., and Young and Shearing, JJ., concur.