Gibbons, C. J., with whom Douglas and Cherry, JJ., agree,
concurring in part and dissenting in part:
I concur with the majority that the district court properly granted summary judgment upon the claim for negligent infliction of emotional distress.[1] In addition, I agree that the primary implied assumption of risk doctrine should be addressed by the district court as part of its initial duty analysis and that the application of the doctrine should not be left to the jury in negligence cases.[2] I agree with the majority’s reasoning in adopting the limited duty rule, as well as its clarification of Mizushima v. Sunset Ranch.[3] *223 However, I disagree with the majority’s application of the limited duty rule to this case. Because I conclude that it does not apply here, and there are genuine issues of material fact remaining as to the claims for negligence and loss of consortium, I would reverse the district court’s summary judgment as to those claims.
Since Mrs. Turner was sitting in the Beer Garden and not in the stands at the time of her injury, the limited duty rule should not apply. As the New Jersey Supreme Court recognized, to apply the limited duty rule ‘ ‘to [an] entire stadium would convert reasonable protection for owners to immunity by virtually eliminating their liability for foreseeable, preventable injuries to their patrons even when the fans are no longer engaged with the game.”[4] Thus, “[b]ecause principles of fairness, and by implication public policy, support the application of traditional tort concepts to areas outside of the stands,” we should not expand the scope of the limited duty rule past the stands.[5] Instead, the limited duty rule is a very specific, historically based exception to the general rule that traditional negligence standard of care principles apply under Nevada’s comparative negligence system.[6] Applying the limited duty rule to baseball games does not suggest that there are numerous other circumstances for which Nevada courts should carve out exceptions to our policy disfavoring summary judgment in negligence cases.[7] Nonetheless, because the existence of a “duty” is a question of law for the courts to determine, there may be other cases in which summary judgment is appropriate because the moving party lacks a duty as a matter of law.[8]
The determinative issue under a general duty analysis is “whether ‘such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other.’ ”[9] In this case, the majority acknowledges that business proprietors owe “a general duty to use reasonable care to keep the premises in a reasonably safe condition for use.”[10] This general duty applies unless another legal principle — such as the stadium *224 limited duty rule — eliminates it as a matter of law. Because the limited duty rule should not apply outside of the stands, I conclude that the 51s had a general duty to protect Mrs. Turner from injury in the Beer Garden. Whether the 51s breached that duty by failing to provide a protective screen or barrier is a question of fact for the jury.[11] Consequently, I would reverse summary judgment regarding the negligence claim. In addition, because summary judgment was inappropriate as to the negligence action, I would also reverse the summary judgment on Mr. Turner’s derivative claim for loss of consortium.[12]

 While the majority concludes that the district court properly dismissed Mr. Turner’s negligent infliction of emotional distress claim because the 51s satisfied their legal duty as a matter of law, I conclude that summary judgment was proper because the TUrners failed to present evidence that Mr. Turner suffers “ ‘serious emotional distress’ causing physical injury or illness.” Barmettler v. Reno Air, Inc., 114 Nev. 441, 448, 956 P.2d 1382, 1387 (1998).

 See Davenport v. Cotton Hope Plantation, 508 S.E.2d 565, 570 (S.C. 1998) (recognizing that the primary implied assumption of risk doctrine “goes to the initial determination of whether the defendant’s legal duty encompasses the risk encountered by the plaintiff”).

 103 Nev. 259, 737 P.2d 1158 (1987).

 Maisonave v. Newark Bears, 881 A.2d 700, 709 (2005).

 Id.

 Auckenthaler v. Grundmeyer, 110 Nev. 682, 687-88, 877 P.2d 1039, 1042-43 (1994).

 See Harrington v. Syufy Enters., 113 Nev. 246, 250-51, 931 P.2d 1378, 1381 (1997) (concluding that appellant presented a material issue of fact regarding whether a danger was “obvious”).

 See id. at 249-50, 931 P.2d at 1380-81 (noting that the obvious danger rule survived the enactment of Nevada’s comparative negligence statute).

 Lee v. GNLV Corp., 117 Nev. 291, 295, 22 P.3d 209, 212 (2001) (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 37, at 236 (5th ed. 1984)).

 Hall v. SSF, Inc., 112 Nev. 1384, 1393, 930 P.2d 94, 99 (1996).

 I note, as the majority does in note 2, that the 51s provided protection from stray balls in two other concession areas.

 Cf. Gunlock v. New Frontier Hotel, 78 Nev. 182, 185 n.1, 370 P.2d 682, 684 n.1 (1962) (concluding that appellant’s claim for loss of consortium “was dependent upon the success of his wife’s claim . . . [and] [h]er claim not having been established, his must fail as well”).