**131 Nev., Advance Opinion 34**

IN THE COURT OF APPEALS OF THE STATE OF NEVADA

BRANDON DOUGLAS NUTTON, AN
INDIVIDUAL,
Appellant,
vs.
SUNSET STATION, INC., A NEVADA
CORPORATION D/B/A SUNSET
STATION HOTEL & CASINO,
Respondent.

No. 62878

**FILED**

JUN 11 2015


TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court summary judgment entered in a personal injury action. Eighth Judicial District Court, Clark County; Susan Johnson, Judge.

*Affirmed.*

Kravitz, Schnitzer & Johnson, Chtd., and Martin J. Kravitz and Kristopher T. Zeppenfeld, Las Vegas,
for Appellant.

Pyatt Silvestri and Robert P. Molina and Jay T. Hopkins, Las Vegas,
for Respondent.

BEFORE GIBBONS, C.J., TAO and SILVER, JJ.

*OPINION*

By the Court, TAO, J.:

In this appeal, we explore the relationship between Rule 15(a) and Rule 16(b) of the Nevada Rules of Civil Procedure (NRCP), both of

which govern the procedures for seeking leave to amend pleadings in a civil action. Under NRCP 15(a), a party should be granted leave to amend a pleading "when justice so requires" and the proposed amendment is not futile. However, when a party seeks to amend a pleading after the deadline previously set for seeking such amendment has expired, NRCP 16(b) requires a showing of "good cause" for missing the deadline. We further explore whether a proposed amendment under NRCP 15(a) can be considered to be futile because it is unsupported by, or contradicts, facts previously uncovered during discovery.

We conclude that when a motion seeking leave to amend a pleading is filed after the expiration of the deadline for filing such motions, the district court must first determine whether "good cause" exists for missing the deadline under NRCP 16(b) before the court can consider the merits of the motion under the standards of NRCP 15(a). Under the circumstances of this case, the district court failed to independently analyze whether the proposed amendment was timely under the standards of NRCP 16(b) before considering whether it was warranted under the standards of NRCP 15(a). The district court also did not correctly apply the futility exception to NRCP 15(a), but nonetheless reached the correct conclusion under the facts of this case, and we therefore affirm.

*FACTS AND PROCEDURAL HISTORY*

Appellant Brandon Nutton slipped and fell while bowling with some friends at a bowling center operated by respondent, Sunset Station Hotel & Casino, shattering his right patella. At the time, Nutton was wearing his street shoes rather than bowling shoes rented from Sunset Station.

Nutton filed a complaint for personal injury against Sunset Station alleging that he slipped on "a heavy concentration of lane wax" or "lane oil" improperly applied to the approach area of the bowling lane so thickly his clothes were "inundated" after the fall. The complaint presented a single claim for negligence alleging that Sunset Station breached its duty of care by improperly placing excessive lane wax or oil in the approach area.

Over the ensuing months of discovery, Nutton repeated in interrogatory responses, as well as his own deposition, that he fell on excessive wax or oil so thick it permeated his clothes. He claimed "[t]he oil was thick and clear" and "based on my experiences, I can say with certainty that it was lane oil that I slipped on." During his deposition, Nutton was asked whether he had worn bowling shoes or street shoes when the fall occurred. He responded he had rented bowling shoes from Sunset Station on the day of the fall, but did not put them on because no employee of Sunset Station explained the need to do so. Nutton denied his street shoes played any role in the fall, testifying, "I don't find that bowling shoes would have been a factor in my slipping and because I don't see how that's pertinent. . . . I feel as though I would have fallen in the same fashion whether I was wearing my own shoes or the shoes they provide."

The parties located no other witness who saw or felt excessive wax or oil on the floor. To the contrary, Sunset Station produced an expert report concluding that a study of the bowling alley's surveillance video revealed no evidence of a foreign substance on the floor and showed other people bowling in the same approach area just before Nutton with no difficulty. Moreover, Nutton retained his own expert witness who agreed

 

"Nutton did not slip and fall from oil residue on the approach." These opinions were contained in an expert report prepared before the expiration of the deadline to amend pleadings.

Subsequently, Nutton filed a motion with the district court seeking leave to amend his complaint pursuant to NRCP 15(a). Conceding that his own expert had agreed excessive lane oil did not cause his fall, Nutton sought to amend his theory of liability to instead plead that the fall was caused by his street shoes and Sunset Station had negligently failed to ensure he wore bowling shoes while he bowled. The proposed amended complaint asserted that Sunset Station's own policies required bowlers to wear bowling shoes at all times while bowling, but employees and agents of Sunset Station breached their duty by failing to enforce the policy and permitting Nutton to bowl without them. Nutton also sought to assert that Sunset Station possessed superior knowledge regarding the risks of bowling in street shoes, yet failed to warn him of any danger.

Nutton's motion was filed approximately three weeks after the expiration of the deadline to amend pleadings previously imposed by the district court. At the time, the final discovery cutoff date was just over two months away, and trial was set to begin three months after the close of discovery. Nutton's motion to amend was also filed after the expiration of the statute of limitations period for asserting a negligence claim.

Sunset Station filed an opposition to Nutton's motion. The opposition noted that Nutton had previously denied his shoes played any role in the fall. Sunset Station also provided some photographs of signs posted around the bowling center warning of the danger of failing to wear bowling shoes while bowling. Based upon these photographs and Nutton's prior testimony, Sunset Station argued that Nutton's proposed

amendment was meritless and had no chance of prevailing at trial or even surviving a future motion for summary judgment. In reply, Nutton noted Sunset Station had failed to provide any evidence regarding when the signs had been posted, and thus argued the photographs were irrelevant because no evidence had been presented demonstrating they were in place at the time of the fall.

The district court denied Nutton's motion. During oral argument, the district court expressed concern that the proposed amended complaint set forth a "totally different theory of [the] case" than had been alleged in the original complaint, and the motion had been filed "too close to trial." The district court also suggested the amendments would probably not survive a future summary judgment motion, were one to be filed by Sunset Station. The district court's written order concluded that Nutton's motion was untimely and, furthermore, even if leave were granted, the proposed amendment "would be futile given the results of the discovery already conducted."[1]

Shortly after the district court denied Nutton leave to amend, Sunset Station filed a motion seeking summary judgment in its favor on the theory of negligence pleaded in the original complaint. Nutton's opposition conceded that "no genuine issue of fact exists as to [Nutton's] original theory of negligence liability set forth in his original Complaint."

---

[1]During the hearing, the district court also expressed "concern" that Nutton's amendment was proposed after the expiration of the limitations period applicable to the amended cause of action and might not "relate back" to the filing of his original complaint. However, the district court did not make any finding on this issue in its written order, and therefore it is not part of this appeal.

The district court granted summary judgment in favor of Sunset Station and awarded attorney fees and costs. This appeal followed.

*ANALYSIS*

Nutton contends the district court erred by refusing to grant leave to amend the complaint even though discovery was still open and the allegations of the proposed amended complaint had been substantially explored during discovery. Nutton also argues that, although summary judgment was properly granted as to the theory of liability set forth in his original complaint, summary judgment would not have been appropriate had he been given leave to amend. Finally, Nutton challenges the award of attorney fees and costs, arguing that it was predicated upon the improper granting of summary judgment resulting from the district court's erroneous decision to deny him leave to amend his complaint.

Although Nutton separately challenges all three decisions issued by the district court, all three arise from a single overarching issue, namely, the allegedly erroneous denial of his motion seeking leave to amend his complaint. If the district court's denial of leave was error, then it follows that its orders granting summary judgment and awarding attorney fees and costs were also improper. Therefore, we begin with the district court's resolution of Nutton's motion seeking leave to amend.

The district court denied Nutton's motion on two grounds. First, it found that the request was untimely. Second, it concluded the proposed amendment would have been futile even if it had been brought earlier in the case. We consider each of these grounds *seriatim*.

*The relationship between Rule 15(a) and Rule 16(b)*

NRCP 15(a) recites that when a party seeks leave to amend a pleading after the initial responsive pleadings have been served, "leave

COURT OF APPEALS
OF
NEVADA

(O) 1947B

shall be freely given when justice so requires." The Nevada Supreme Court has held that "in the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant—the leave sought should be freely given." *Stephens v. S. Nev. Music Co.*, 89 Nev. 104, 105-06, 507 P.2d 138, 139 (1973). Thus, NRCP 15(a) contemplates the liberal amendment of pleadings, which in colloquial terms means that most such motions ought to be granted unless a strong reason exists not to do so, such as prejudice to the opponent or lack of good faith by the moving party. *Stephens*, 89 Nev. at 105, 507 P.2d at 139.

The liberality reflected in NRCP 15(a) recognizes that discovery is a fluid process through which unexpected and surprising evidence is uncovered with regularity (particularly when important evidence was solely in the possession of one party when the case was initiated), and parties should have some ability to tailor their pleadings and reframe the case around what they might have learned after the initial pleadings were filed. Such flexibility aids not only the parties but also the court and the judicial process by helping to ensure that the pleadings remain focused on issues that are truly in dispute and the court's time is not unduly wasted on allegations that may have been originally made in good faith but eventually fail to pan out despite initial investigation.

On its face, NRCP 15(a) makes no reference to whether leave has been requested before or after the close of discovery, or before or after any other deadline imposed by the trial court. Read in isolation, the text of NRCP 15(a) appears to suggest that the liberal standards for granting leave remain the same regardless of when the motion has been filed. But

NRCP 15(a) cannot be read in a vacuum; the rules of civil procedure must be read together. *See generally Rosen v. Dick*, 639 F.2d 82, 94 (2d. Cir. 1980).[2] *See also* NRCP 1 (providing that rules of procedure are to be construed and administered to secure the just, speedy, and inexpensive determination of every action).

One rule that frequently overlaps with NRCP 15(a) is NRCP 16(b). NRCP 16(b) requires, among other things, the district court to set deadlines in each case for various events, including deadlines for conducting various types of discovery and for filing various kinds of motions. One deadline specifically contemplated by NRCP 16(b) is one by which motions seeking to amend the pleadings must be filed with the court. Moreover, NRCP 16(b) recites that the deadlines imposed by the court under this rule "shall not be modified" except "upon a showing of good cause."

Thus, when a party seeks leave to amend a pleading pursuant to NRCP 15(a) after a deadline set under NRCP 16(b) for filing such a motion has already elapsed, such motions implicate NRCP 16(b) in addition to NRCP 15(a) because they effectively seek a waiver or extension of that deadline so that the merits of the motion may be considered. If this were not so, and a motion seeking leave would be considered only under the standards of NRCP 15(a) no matter when it was filed, then the

---

[2]Where the Nevada Rules of Civil Procedure parallel the Federal Rules of Civil Procedure, rulings of federal courts interpreting and applying the federal rules are persuasive authority for this court in applying the Nevada Rules. *See Exec. Mgmt., Ltd. v. Ticor Title Ins. Co*, 118 Nev. 46, 53, 38 P.3d 872, 876 (2002).

Court of Appeals
OF
Nevada

(O) 1947B

deadlines required to be imposed under NRCP 16(b) would become meaningless and could be blithely ignored.

Functionally, NRCP 16(b) serves as something of a counterweight to NRCP 15(a). In contrast to the fluidity reflected in NRCP 15(a), the purpose of NRCP 16(b) is "to offer a measure of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339-40 (2d Cir. 2000) (internal quotation marks omitted). Thus, "[w]here a scheduling order has been entered, the lenient standard under Rule 15(a), which provides leave to amend 'shall be freely given,' must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'" *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) (quoting prior version of FRCP 15(a) and 16(b)). "Disregard of the [scheduling] order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992). NRCP 16 was drafted precisely to prevent this from occurring, and "its standards may not be short-circuited by an appeal to those of Rule 15." *Id.*

The Nevada Supreme Court has never defined what constitutes "good cause" under NRCP 16(b), but NRCP 16(b) is based in relevant part upon Rule 16(b) of the Federal Rules of Civil Procedure. Multiple federal courts of appeal have held that, although Rule 15(a) governs the amendments of pleadings in general, Rule 16(b) "governs amendment of pleadings after a scheduling order deadline has expired." *S&W Enters., LLC v. South Trust Bank of Ala., NA*, 315 F.3d 533, 536 (5th

Cir. 2003); *see In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 437 (8th Cir. 1999) ("When the district court has filed a Rule 16 pretrial scheduling order, it may properly require that good cause be shown for leave to file an amended pleading that is substantially out of time under that order."); *Riofro Anda v. Ralston Purina Co.*, 959 F.2d 1149, 1154-55 (1st Cir. 1992) ("The district court did not abuse its discretion by adhering to its scheduling order and refusing to allow plaintiffs to amend their complaint. Under the facts here, the allowance of an amendment would have nullified the purpose of rule 16"); *Johnson*, 975 F.2d at 608-09 (some "courts have considered a motion to amend the complaint [after the amendment deadline] as a motion to amend the scheduling order and the court's denial of that motion a denial of a motion to amend the scheduling order"); *Dedge v. Kendrick*, 849 F.2d 1398 (11th Cir. 1988) (holding that a motion filed after scheduling order deadline is untimely and, where appropriate, may be denied solely on that ground); *R.L. Clark Drilling Contractors, Inc. v. Schramm, Inc.*, 835 F.2d 1306, 1308 (10th Cir. 1987) (construing a party's assertion of matter after scheduling order deadline as a request to modify the deadline).

The distinction between NRCP 15(a) and NRCP 16(b) is not merely a cosmetic one, because the definition of "good cause" under Rule 16(b) is narrower than the considerably more lenient considerations governing amendment under Rule 15(a). "A court's evaluation of good cause [under Rule 16(b)] is not coextensive with an inquiry into the propriety of the amendment under Rule 15." *Johnson*, 975 F.2d at 609 (internal quotation marks omitted). "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule

16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Id.*

In determining whether "good cause" exists under Rule 16(b), the basic inquiry for the trial court is whether the filing deadline cannot reasonably be met despite the diligence of the party seeking the amendment. *See* 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1522.2 (2010), and cases cited therein. Courts have identified four factors that may aid in assessing whether a party exercised diligence in attempting, but failing, to meet the deadline: (1) the explanation for the untimely conduct, (2) the importance of the requested untimely action, (3) the potential prejudice in allowing the untimely conduct, and (4) the availability of a continuance to cure such prejudice. *S&W Enters.*, 315 F.3d at 536. However, the four factors are nonexclusive and need not be considered in every case because, ultimately, if the moving party was not diligent in at least attempting to comply with the deadline, "the inquiry should end." *Johnson*, 975 F.2d at 609. Thus, of the four factors, the first (the movant's explanation for missing the deadline) is by far the most important and may in many cases be decisive by itself. *Id.* ("Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification."). Lack of diligence has been found when a party was aware of the information behind its amendment before the deadline, yet failed to seek amendment before it expired. *See Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y 2012) ("A party fails to show good cause when the proposed amendment rests on information that the party knew, or should have known, in advance of the

deadline." (internal quotation marks omitted)). In addition, "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson*, 975 F.2d at 609.

Even where good cause has been shown under NRCP 16(b), the district court must still independently determine whether the amendment should be permitted under NRCP 15(a). *See Grochowski*, 318 F.3d at 86. Thus, when a party seeks leave to amend a pleading after the expiration of the deadline for doing so, it must first demonstrate "good cause" under NRCP 16(b) for extending the deadline to allow the merits of the motion to be considered by the district court before the merits of the motion may then be considered under NRCP 15(a). *See S&W Enters.*, 315 F.3d at 536 ("Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave.").

In this case, the district court did not make findings in conformance with NRCP 16(b) but rather only applied the standards associated with NRCP 15(a). Notwithstanding this omission, the record demonstrates the district court's conclusion would have been correct even under the standards of NRCP 16(b). Nutton's motion sought to fundamentally change the factual premise of his negligence claim after the deadline for amending pleadings had elapsed, with only a short time remaining to conduct discovery. The district court concluded that, under the scheduling order then in place, insufficient time remained in discovery for Sunset Station to explore the new allegations and for both parties to prepare for trial, which was then only a few months away.

Nutton argues that the district court's conclusion was erroneous because both parties explored the effect Nutton's street shoes

may have played in his fall during discovery already conducted in the case. For example, Nutton was asked questions about his shoes by opposing counsel during his deposition, and witnesses for Sunset Station testified during depositions that Sunset Station's policies required bowlers to wear bowling shoes while bowling. From this, Nutton argues that permitting him to file his amended pleadings would actually have required very little additional discovery because much discovery had already been completed. But this argument is something of a double-edged sword because, if we accept Nutton's characterization to be true and agree that both Nutton and Sunset Station had already thoroughly investigated the role his street shoes played in the fall, then the question arises why Nutton waited until after the expiration of the NRCP 16(b) deadline to try to add the claim to the case. The district court reasonably concluded that Nutton acted dilatorily in failing to seek to file the amendment months earlier, especially when he apparently realized much earlier that his street shoes may have played a role in causing the fall. *See Perfect Pearl*, 889 F. Supp. 2d at 457 (good cause not shown "when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline" (internal quotation marks omitted)).

Nutton also contends that allowing his proposed amendment would not have resulted in any prejudice to Sunset Station because the new claim merely proffered a "refined theory of liability" not dissimilar to his original negligence claim.[3] The district court concluded that the

---

[3]Nutton argues that, under NRCP 15(b), he could have amended his pleadings even during trial itself to conform to the evidence, and therefore Sunset Station cannot be prejudiced by an amendment before trial, even if after the technical deadline. As an initial observation, such amendments
*continued on next page...*

Court of Appeals
of
Nevada

(O) 1947B

proposed amendment set forth a "totally different theory of [the] case" than had been originally pleaded and observed the original complaint alleged "not one thing" about street shoes. This observation was factually correct.

Under these circumstances, the record demonstrates that Nutton did not act diligently in filing his motion when he did. In particular, Nutton proffered no explanation as to why he could not have filed his motion before the deadline for doing so, especially since he asserted that both parties had already conducted discovery relating to his proposed new claim. Rather than filing the motion before the deadline, he inexplicably let the deadline elapse by three weeks. Thus, Nutton's motion would have been properly denied under NRCP 16(b).

*The futility exception to NRCP 15(a)*

The district court also determined that Nutton's motion was likely futile "given the results of the discovery already conducted."

Under NRCP 15(a), leave to amend, even if timely sought, need not be granted if the proposed amendment would be "futile." *Allum v. Valley Bank of Nev.*, 109 Nev. 280, 287, 849 P.2d 297, 302 (1993); *see also Halcrow Inc. v. Eighth Judicial Dist. Court*, 129 Nev. ___, ___, 302 P.3d 1148, 1152 (2013). A proposed amendment may be deemed futile if

---

*...continued*
are permitted when a matter has been tried by "consent," NRCP 15(b), and it is not clear that Sunset Station would have "consented" to litigate Nutton's new claim at trial. Moreover, because this motion was resolved before trial, that question is not before us in this appeal. In any event, whether Sunset Station might have consented to litigate a new claim in a future trial has nothing to do with whether Nutton's motion complied with NRCP 16(b) at the time it was filed.

the plaintiff seeks to amend the complaint in order to plead an impermissible claim, such as one which would not survive a motion to dismiss under NRCP 12(b)(5) or a "last-second amendment[ ] alleging meritless claims in an attempt to save a case from summary judgment." *Soebbing v. Carpet Barn, Inc.*, 109 Nev. 78, 84, 847 P.2d 731, 736 (1993).

Few Nevada cases explain precisely how the futility exception is to be properly applied. In theory, the exception is intended to mean that an amendment should not be allowed if it inevitably will be considered to be a waste of time and resources on which the movant has no realistic chance of prevailing at trial. But in practical application, a question exists regarding to what extent a district court may consider the ultimate merits of a proposed amendment at a time when all it has before it might be only the pleading itself, perhaps coupled with a few strands of discovery conducted under the auspices of the prior, unamended, pleading. In many such instances, improper or careless application of the futility exception to NRCP 15(a) could create an irreconcilable conflict between the loose pleading standards of NRCP 8, which governs what must be pleaded, and the more demanding evidentiary standards of NRCP 56, which governs whether what has been pleaded is entitled to proceed to trial.

The Nevada Supreme Court originally adopted the "futility" exception to NRCP 15(a) in *Allum*, 109 Nev. at 287, 849 P.2d at 302. There, the court affirmed a district court's denial of leave to amend when the Racketeer Influenced and Corrupt Organization Act (RICO) claim plaintiff sought to add failed to adequately plead the occurrence of a "predicate act" required by the RICO statute. In reaching its decision, the Nevada Supreme Court expressly adopted the "futility" exception from the United States Court of Appeals for the Ninth Circuit's decision in *Reddy v.*

*Litton Industries, Inc.*, in which the Ninth Circuit affirmed a district court's denial of leave to amend when the allegations of the complaint itself made clear that the movant's claims were not cognizable. 912 F.2d at 291, 296 (9th Cir. 1990) ("His complaint makes clear that his injury was caused by his alleged wrongful termination. . . . It would not be possible for [plaintiff] to amend his complaint to allege a completely new injury that would confer standing to sue without contradicting any of the allegations of his original complaint."). Similarly, in *Halcrow*, 129 Nev. at ___, 302 P.3d at 1152-54, the Nevada Supreme Court affirmed the district court's denial of leave to add additional claims that were barred on their face by the "economic loss" doctrine, concluding that, under that doctrine, the movant "cannot assert claims of negligent misrepresentation against Halcrow."

In these three cases, the question of futility was resolved only with reference to the proposed amendment itself, because the court concluded that the amendments were facially futile without having to look outside the four corners of the pleadings. However, in the instant case, Sunset Station asked the district court to find Nutton's proposed amendments to be futile based on evidence lying almost entirely outside of the pleadings. The legal question before us inquires to what extent NRCP 15(a) permits a district court to look beyond the face of the proposed amendment and consider whether the amendment is likely to prove victorious before allowing it to be made.

In Nevada, pleadings are governed by NRCP 8, which requires only general factual allegations, not itemized descriptions of evidence. *See* NRCP 8 (complainant need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief"); *see also Breliant*

*v. Preferred Equities Corp.*, 109 Nev. 842, 846, 858 P.2d 1258, 1260 (1993) ("The test for determining whether the allegations of a complaint are sufficient to assert a claim for relief is whether [they] give fair notice of the nature and basis of a legally sufficient claim and the relief requested."). Thus, a pleading need only broadly recite the "ultimate facts" necessary to set forth the elements of a cognizable claim that a party believes can be proven at trial. A pleading is not required to identify the particular "evidentiary facts" that will be employed to prove those allegations. *See* Jack Friedenthal, Mary Kane & Arthur Miller, *Civil Procedure* § 5.5 (4th ed. 2005) (discussing distinction between "ultimate facts" upon which a party bears the burden of proof, such as whether a breach of duty occurred, and the "evidentiary facts" such as particular testimony or exhibits that may be used to meet that burden of proof).

Furthermore, Nevada is a "notice pleading" state, which means that the ultimate facts alleged within the pleadings need not be recited with particularity (except when required by NRCP 9, which is not at issue in this appeal), much less supported by citations to evidence and testimony within the pleading. *See Hall v. SSF, Inc.*, 112 Nev. 1384, 1391, 930 P.2d 94, 98 (1996) ("[A] complaint need only set forth sufficient facts to demonstrate the necessary elements of a claim for relief so that the defending party has adequate notice of the nature of the claim and the relief sought.") (internal quotation marks omitted); *Pittman v. Lower Court Counseling*, 110 Nev. 359, 365, 871 P.2d 953, 957 (1994) ("Nevada is a notice pleading jurisdiction and we liberally construe pleadings to place matters into issue which are fairly noticed to the adverse party."), *overruled on other grounds by Nunez v. City of N. Las Vegas*, 116 Nev. 535, 1 P.3d 959 (2000). Thus, a plaintiff is entitled under NRCP 8 to set forth

only general allegations in its complaint and yet be able to rely in trial upon specific evidentiary facts never mentioned anywhere in its pleadings.

In contrast, the question of whether a claim would survive summary judgment under NRCP 56 is one that typically depends on evidence lying almost entirely outside the scope of the pleadings. A successful summary judgment motion requires the moving party to demonstrate both the absence of genuinely contested material facts as well as a prima facie entitlement to judgment as a matter of law based upon undisputed evidence that would be admissible at trial (or upon a lack of evidence if the nonmoving party bears the burden of persuasion at trial). Only after both showings have been made does the burden shift to the opposing party to prove the existence of genuinely disputed material facts. NRCP 56(e) (when a motion for summary judgment relies upon affidavits, the affidavits must set forth "such facts as would be admissible in evidence"); *see Cuzze v. Univ. & Cmty. Coll. Sys. of Nev.*, 123 Nev. 598, 602-03, 172 P.3d 131, 134 (2007) (moving party must make initial showing of both an absence of genuinely disputed material facts as well as entitlement to judgment as a matter of law before burden shifts to opposing party); *Collins v. Union Fed. Sav. & Loan Ass'n*, 99 Nev. 284, 302, 662 P.2d 610, 621 (1983) (evidence in support of or in opposition to summary judgment must be evidence that would be admissible at trial). Summary judgment cannot be granted unless and until all of these requirements are satisfied.

Consequently, a disparity exists between the general, and relatively lax, requirements of NRCP 8 and the highly specific evidentiary and procedural requirements of NRCP 56. In this case, Sunset Station argued that Nutton's amendment should be deemed futile not because it

failed to facially plead a cognizable claim under NRCP 12, but because it supposedly had no chance of succeeding on its merits under NRCP 56. When a district court is asked to apply the standards of NRCP 56 to determine the validity of a pleading that is only required to comply with NRCP 8 and 12, the court is asked to compare the general allegations of a pleading against specific evidence already uncovered during discovery (or that might possibly be uncovered later in discovery). This exercise must be done with great care and with considerable deference to the pleadings so that the court does not deny amendments that might have considerable merit.[4] The liberality embodied in NRCP 15(a) requires courts to err on the side of caution and permit amendments that appear arguable or even borderline, because denial of a proposed pleading amendment amounts to denial of the opportunity to explore any potential merit it might have had.[5] *See generally Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the

---

[4]NRCP 12(b) permits a court to look at evidence outside of the pleadings in some instances to determine whether a proper claim has been stated, but only if the parties are "given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Thus, when considering matters outside of the pleadings, the district court must apply the standards of NRCP 56 rather than NRCP 12(b).

[5]Motions seeking leave to amend a pleading ordinarily must be filed before the close of discovery; indeed, filing such a motion after discovery has already closed has been held to be one reason to deny such a motion. *See McNall v. Credit Bureau of Josephine County*, 689 F. Supp. 2d 1265, 1269 (D. Or. 2010) ("The timing of a motion to amend after completion of discovery . . . weighs heavily against allowing amendment."). Sunset Station's argument thus creates a potential paradox. Under Sunset Station's argument, a party should not be permitted leave to amend a pleading unless it is prepared to defeat a motion for summary judgment challenging the amendment, but the party might not possess the evidence needed to do that until discovery has closed. Furthermore, a party might

*continued on next page...*

Court of Appeals
of
Nevada

(O) 1947B

underlying facts or circumstances relied upon by a party may be the proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."); *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) ("rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality" [and] "amendment is to be liberally granted where from the underlying facts or circumstances, the plaintiff may be able to state a claim" (internal quotation marks omitted)).

In the case at bar, the district court determined that Nutton's proposed amendment was not self-evidently futile on its face, but rather that the amendment was unlikely to ultimately prevail at trial "given the results of the discovery already conducted." Thus, the district court implicitly compared the facts pleaded in the proposed amendment against the discovery already conducted in the case and concluded that Nutton could not prevail either at trial or in response to a future motion for summary judgment. However, no motion for summary judgment had yet been filed, and thus Sunset Station had not yet met its initial burden of demonstrating a facial entitlement to judgment under NRCP 56. Furthermore, because no summary judgment motion had yet been filed and discovery was still open, this is not a case in which the only obvious motive for Nutton's motion was to serve as a transparent, last-ditch effort

---

*...continued*
possess limited means to conduct discovery relating to claims that have not already been pleaded while discovery was open. In short, Sunset Station's approach could effectively permit a proposed pleading amendment to be denied because the movant had not uncovered evidence supporting the amendment before any such discovery had actually been conducted and at a time when any such discovery might not even have been permitted.

to avoid summary judgment that otherwise might have been imminently granted.

Moreover, the briefing and exhibits before the district court in connection with Nutton's NRCP 15(a) motion contained at least one factual dispute that would have precluded the court from granting summary judgment based upon the evidence then before it. Specifically, Sunset Station's futility argument relied in part upon photographs of warning signs advising bowlers to wear bowling shoes. However, as Nutton correctly noted in his reply briefing, Sunset Station failed to provide admissible evidence proving that those signs were in place on the date of the fall. Thus, Sunset Station would not have been entitled to summary judgment based on the materials presented to the district court in connection with Nutton's motion. The district court fell into the trap of surmising that Nutton's proposed amendment would eventually prove to be futile under the standards of NRCP 56 before a sufficient legal basis existed to warrant this conclusion.[6]

---

[6]The district court's reaction was understandable in view of Nutton's deposition testimony which facially contradicted the factual premise of his proposed amendment. Nevertheless, had Sunset Station actually filed a motion for summary judgment against the amended claim, Nutton conceivably could have defended against it by seeking sanctuary under NRCP 56(f). NRCP 56(f) ("Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."); *see Francis v. Wynn Las Vegas*, 127 Nev. ___, 262 P.3d 705 (2011) (court may deny summary judgment if additional discovery necessary to fully respond). But here, it is not clear whether such a mechanism would have been available to Nutton in replying to an opposition to a motion originally filed under NRCP 15(a).

*continued on next page...*



Sunset Station's futility argument noted that Nutton's new cause of action depended upon facts apparently contradicted by his prior deposition testimony. Specifically, Nutton had testified during his deposition that he did not believe his street shoes played a role in his fall, yet his proposed new claim asserted exactly that. Sunset Station thus contended that the amendment could not survive summary judgment because Nutton should not be allowed to change his story so late in the game. But the inconsistency cited by Sunset Station related to a matter of opinion regarding the ultimate cause of Nutton's fall, and not an observation of fact at all; merely because Nutton expressed a personal opinion (as an untrained layperson) that his shoes played no role in his fall does not necessarily mean his opinion was scientifically accurate. Nutton's personal opinion regarding the cause of the fall might have been admissible under the rules of evidence, *see* NRS 50.265 & 50.295, but it was not necessarily conclusive upon the jury, and denial of the amendment meant that Nutton was deprived of the opportunity to explain to a jury that his personal opinion may have been legitimately mistaken or simply a layperson's impression of events that did not match the physics of the fall.

The mere fact that a party seeks to proffer apparently inconsistent testimony or assert apparently inconsistent positions at some point during the course of litigation does not, by itself, justify the granting

---

*...continued*

The only opportunity for Nutton to have requested relief under NRCP 56(f) would have been in his reply brief, and it is not clear that the district court would have permitted Sunset Station to file a sur-reply so that Nutton's request could be fully considered.

of summary judgment against that party. The general rule is that a party cannot defeat summary judgment by contradicting itself in response to an already-pending NRCP 56 motion. *See Aldabe v. Adams*, 81 Nev. 280, 284-85, 402 P.2d 34, 36-37 (1965) (refusing to credit sworn statement made in opposition to summary judgment that was in direct conflict with an earlier statement of the same party), *overruled on other grounds by Siragusa v. Brown*, 114 Nev. 1384, 1393, 971 P.2d 801, 807 (1998); *see also Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806-07 (1999). But here, no summary judgment motion was pending at the time Nutton filed his motion. When a contradiction is not necessarily driven by a desperate attempt to avoid a pending summary judgment motion that appears meritorious on its face, a party's inconsistent testimony actually creates a question of credibility for the jury to resolve, unless the district court affirmatively concludes that the conflicting testimony either creates judicial estoppel or represents a legal "sham" designed solely to avoid summary judgment, and was not the result of an honest discrepancy, a mistake, or newly discovered evidence.[7] *See Breliant v. Preferred Equities*

---

[7]Even where a summary judgment motion has already been filed and a party seeks to defeat it by presenting last-minute inconsistent testimony, under federal jurisprudence, the general rule is that an apparent contradiction between an affidavit submitted in opposition to a summary judgment motion and the same witness's prior deposition testimony presents a question of credibility for the jury, unless the court affirmatively concludes that the later affidavit constitutes a "sham." *See Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975) (citing *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)). In *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 894 (5th Cir. 1980), the Fifth Circuit stated:

*continued on next page...*

 

*Corp.*, 112 Nev. 663, 669, 918 P.2d 314, 318 (1996) (stating that when a change in testimony "represent[s] a legitimate abandonment of a clearly unsupportable theory of the case, rather than an attempt . . . to 'have it both ways,'" judicial estoppel does not bar a change in party's testimony); *see also Mainor v. Nault*, 120 Nev. 750, 765, 101 P.3d 308, 318 (2004) (explaining that "judicial estoppel is an extraordinary remedy that should be cautiously applied only when a party's inconsistent position arises from intentional wrongdoing or an attempt to obtain an unfair advantage" and "does not preclude changes in position not intended to sabotage the

---

*...continued*

> The gravamen of the *Perma Research-Radobenko* line of cases is the reviewing court's determination that the issue raised by the contradictory affidavit constituted a sham. Certainly, every discrepancy contained in an affidavit does not justify a district court's refusal to give credence to such evidence. In light of the jury's role in resolving questions of credibility, a district court should not reject the content of an affidavit even if it is at odds with statements made in an earlier deposition.

*See also Miller v. A.H. Robins Co.*, 766 F.2d 1102, 1104 (7th Cir. 1985) ("An inconsistent affidavit may preclude summary judgment . . . if the affiant was confused at the deposition and the affidavit explains those aspects of the deposition testimony or if the affiant lacked access to material facts and the affidavit sets forth the newly-discovered evidence."); *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365 (8th Cir. 1983) (inconsistent affidavit may be accepted if it was not a sham but rather was an attempt to explain certain aspects of the confused deposition testimony and therefore was not really inconsistent). Thus, before excluding an apparently inconsistent affidavit, "the district court must make a factual determination that the contradiction was actually a 'sham' [and not] the result of an honest discrepancy, a mistake, or the result of newly discovered evidence." *Kennedy v. Allied Mut. Ins.*, 952 F.2d 262, 267 (9th Cir. 1991).

judicial process" (internal quotation marks omitted)). The district court's futility analysis in this case noted the apparent contradiction, but the court did not make the affirmative findings allowing it to discount the change in Nutton's testimony and conclude there would have been nothing for the jury to resolve. Consequently, the apparent contradiction in this case represented a question of credibility for the jury to resolve, and summary judgment would not necessarily have been inevitable.

Accordingly, in this case, the district court's futility analysis was flawed. Nonetheless, Nutton failed to demonstrate "good cause" permitting the district court to even consider the merits of his belated motion seeking leave, and therefore this error was harmless under the circumstances.[8]

## CONCLUSION

While the district court failed to determine whether "good cause" existed under NRCP 16(b) before reviewing the merits of Nutton's motion under NRCP 15(a), the error was harmless under the circumstances because the record demonstrates the motion would properly have been denied under the standards of NRCP 16(b). The district court

---

[8]Nutton also appeals the district court's order granting summary judgment and its order granting attorney fees and costs, but the only error ascribed to the district court was that the court did not allow him to amend his complaint prior to summary judgment being granted. Because we conclude herein that the district court did not err in denying Nutton's motion for leave to amend his complaint, we necessarily must conclude that the district court also did not err in granting summary judgment in favor of Sunset Station on Nutton's original claim that Nutton expressly conceded was not valid.

did not err in granting summary judgment in favor of Sunset Station and awarding attorney fees and costs. We therefore affirm.

_____, J.
Tao

We concur:

_____, C.J.
Gibbons

_____, J.
Silver

Court of Appeals
of
Nevada

(O) 1947B